UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

NORRIS J. MCLAURIN,                          :

                          Plaintiff,         :     **REPORT AND**
                                                   **RECOMMENDATION**
                                                   **TO THE HONORABLE**
            -against-                         :     **PAUL A. CROTTY____**

GEORGE PATAKI, former Governor of            :     07 Civ. 3482 (PAC)(FM)
New York State, et al.,
                                             :
                          Defendants.
---------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

          In this pro se civil rights action pursuant to 42 U.S.C. § 1983, plaintiff

Norris J. McLaurin ("McLaurin"), an inmate at the Mid-Orange Correctional Facility,

claims that the denial of his requests for parole violated his constitutional rights.  As a

consequence, he seeks declaratory and injunctive relief against George E. Pataki

("Pataki") and Eliot S. Spitzer ("Spitzer"), two former Governors of the State of New

York;[1] Robert Dennision ("Dennision"), the former Chairman of the New York State

Division of Parole ("Division of Parole" or "Division"); George Alexander

("Alexander"), the current Chairman of the Division; twelve individuals alleged to be

---

[1]        Spitzer was named as the "Governor of New York."  Since he was sued in his
official capacity, David A. Paterson ("Paterson"), the current Governor, must be substituted as
the defendant pursuant to Fed. R. Civ. P. 25(d).

Parole Commissioners or Parole Officers ("Parole Board" or "Board"); and the Division

of Parole (collectively, the "Defendants").

 The Defendants have now moved to dismiss the amended complaint

("Amended Complaint" or "Am. Compl.") pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure.  For the reasons that follow, I recommend that this

motion be granted.

II. <u>Background</u>

 A. <u>Facts</u>

 Construing McLaurin's Amended Complaint and his other papers in the

light most favorable to him, the relevant facts may be summarized as follows:

 1. <u>Underlying Crime and Sentence</u>

 On October 16, 1991, McLaurin robbed a bank in Binghamton, New York,

threatening the tellers and customers with what appeared to be a firearm.  (Ex. F at 2).[2]

During the course of the incident, McLaurin herded his victims into the teller area and

directed them to get on the ground; he also assaulted one of the tellers.  (Exs. A at 1-2, C

at 5).  The police apprehended McLaurin shortly after he exited the bank and found a toy

cap gun on his person.  (Ex. F at 2).  On April 2, 1992, he pleaded guilty to the Class D

Felony of Attempted Robbery in the Second Degree before Broome County Court Judge

---

 [2] "Ex. __" refers to the exhibits annexed to the Declaration of Assistant Attorney
General Neil Shevlin, dated Nov. 19, 2007.

Patrick Mathews, who subsequently sentenced him, as a persistent violent felony offender, to a prison term of ten years to life.  (Am. Compl. ¶ 20).

After the Appellate Division, Third Department, upheld his sentence, McLaurin filed a federal habeas corpus proceeding in the United States District Court for the Northern District of New York.  On March 27, 1998, the Honorable Rosemary S. Pooler, then a District Judge, held that because McLaurin was sentenced simultaneously for three 1979 robbery convictions, they could be counted as only one conviction for purposes of determining whether he was a persistent violent felony offender.  McLaurin v. Kelly, No. 93 Civ. 1560 (RSP)(GJD), 1998 WL 146282, at *1, 7 (N.D.N.Y. Mar. 27, 1998) (approving Report & Rec. of DiBianco, Mag. J.).  Judge Pooler therefore directed that McLaurin be resentenced, but observed that nothing would preclude the state court from considering "McLaurin's prior conviction for first degree sexual abuse" as a basis for adhering to its prior determination that he was a persistent violent felony offender.[3] Id. at *2.

Perhaps not surprisingly, when Judge Mathews resentenced McLaurin, he again found that McLaurin was a persistent violent felony offender, and sentenced him to the term of ten years to life in prison that he previously had imposed.  (Am. Compl. ¶ 23).

---

[3]      In addition to his three "simultaneous" robbery convictions in 1979, McLaurin had prior felony convictions for sexual abuse in the first degree, attempted possession of prison contraband in the first degree, robbery in the third degree, and conspiracy in the fourth degree. (Ex. A at 3-4).  He also had been adjudicated a youthful offender in connection with an attempted robbery in 1972.  (Id. at 3).

Significantly, during the resentencing proceeding, Judge Mathews addressed the issue of

McLaurin's parole eligibility, stating:

> I think it's a shame.  I've had a lot of time to interact with you over the years and if one thing steps forward, it's clearly that you're an intelligent man, very intelligent, and unquestionably you wasted so many years of your life.  I have the hope that you will, when you are released, turn to productive legal endeavors, and I believe you can make it. . . .  Notwithstanding the convictions in this particular case, [or] the nature of the crimes, I still am willing to state on the record that I think that you should be considered by parole at the earliest possible release date because I think that you have learned your lesson.

(Am. Compl. Attach. at 4-5) (emphasis added).

        2.    Parole Hearings and Other Proceedings from 2001 to 2005

McLaurin first became eligible for parole in August 2001, at which time the

Board denied his request for release without considering Judge Mathews' sentencing

recommendation.  (Am. Compl. ¶ 25).  In August 2003, McLaurin again was denied

release by the Board.  (Id. ¶ 26).  He challenged this determination by filing an Article 78

proceeding in Supreme Court, Orange County, in which he argued that the Parole Board

had violated New York law by failing to consider Judge Mathews' recommendation.  (Id.

¶ 29).  On October 28, 2004, that court held that McLaurin was entitled to a de novo

parole hearing because of the Parole Board's failure to take into account the resentencing

minutes.  (Id. ¶ 30).  The Board appealed this determination.  (Id. ¶ 31).

4

While the Board's appeal was pending, McLaurin had another parole hearing on August 16, 2005, at which time McLaurin's request for release on parole was once again denied without any consideration of the resentencing minutes. (Id. ¶¶ 33-34). Thereafter, on March 14, 2006, the Appellate Division, Second Department, affirmed the decision granting McLaurin's Article 78 petition. As the Appellate Division explained, Judge Mathews' statement constituted a "sentencing recommendation" which the Parole Board was "required to obtain and consider" prior to making its parole determination. McLaurin v. N.Y. State Bd. of Parole, 27 A.D.3d 565, 566 (2d Dep't 2006). The Division of Parole therefore was directed to retrieve McLaurin's resentencing minutes and conduct a de novo hearing. Id. at 565.

        3.     2006 De Novo Parole Hearing

On October 17, 2006, McLaurin made a fourth appearance before three parole commissioners for the de novo hearing directed by the Appellate Division. (Am. Compl. ¶ 39). Although the Board had obtained the resentencing minutes containing Judge Mathews' recommendation and placed them in McLaurin's file in advance of the hearing, (Ex. D), the Inmate Status Report (a cover sheet furnished to the commissioners) still indicated inaccurately that there was no official statement from the sentencing judge. (Am. Compl. ¶ 38). Despite this error, Commissioner Ferguson expressly noted during the hearing that the sentencing minutes were part of McLaurin's folder and that "even the

resentencing judge indicated he noticed [McLaurin's] level of intelligence." (Ex. E at 5,

9). The Board nevertheless denied McLaurin's request for parole, explaining that:

> After a review of the record, interview, and sentencing minutes, the panel has determined that if released at this time there is a reasonable probability that you would not live and remain at liberty without again violating the law and your release would be incompatable with the welfare of society and would so deprecate the serious nature of the crime as to undermine respect for the law. This decision is based on the following factors: Your instant offense is attempted robbery 2nd in which you entered a bank and displayed what appeared to be a firearm during the robbery. Your criminal history is extensive and dates back to a 1972 youthful offender, includes sex abuse, eight felonies, five of which are robberies, multiple prior prison terms and community supervision. Note is made of your programming, sincere remorse and eight years of clean disciplinary record. While the Board notes your markedly improved attitude you have clearly led the life [of] a violent career criminal. You pose a risk to society. Parole is denied.

(Id. at 2).

McLaurin appealed this decision to the Division of Parole Appeals Unit,

which apparently failed to render any decision. (Am. Compl. ¶ 41).

4.    2007 Parole Hearing

On August 22, 2007, McLaurin made his fifth appearance before the Board.

(Id. ¶ 44). This time, the Inmate Status Report provided to the Board had been corrected

to indicate that the resentencing minutes were in McLaurin's file (although it still

incorrectly noted that there had been no official statement from a judge); indeed, the

Report quoted the portion of the resentencing minutes in which Judge Mathews had

stated, "I think that you should be considered by parole at the earliest possible date because I think that you have learned your lesson." (Ex. F at 1-2). The Report further observed that if McLaurin were to be released, his parole should be subject to two mandatory special conditions for sex offenders. (Id. at 3).

At the hearing, Commissioner Smith indicated that the panel had been afforded an opportunity to review the resentencing minutes and noted Judge Mathews' statements about considering McLaurin for parole at the earliest possible date. (Ex. G at 5-6). However, the Board nevertheless denied parole once again, stating:

> After a personal interview, record review, and deliberation, this panel finds your release is incompatible with the public safety and welfare. Your instant offense of attempted robbery 2 involved a bank robbery where you displayed what appeared to be a handgun. At the time you were on parole. You have multiple prior revocations of parole. Consideration has been given to your demonstrated pattern of robbery related crime. Your much improved behavior, program accomplishments, and community support are noted. However due to your lengthy record of crime, and poor supervision record, your release at this time is denied. There is a reasonable probability you would not live and remain at liberty without violating the law. During the interview you displayed little remorse for the victim of your criminal activities.[4]

(Ex. G at 2).

---

[4]    Although the Board indicated that McLaurin had shown "little remorse" during the hearing, in its decision less than one year earlier, it had noted his "sincere remorse." (See Exs. E at 2, G at 2).

7

5.    <u>Institutional Record</u>

During his time in prison, McLaurin has earned a Masters of Professional

Studies degree from the New York Theological Seminary.  (Am. Compl. ¶ 4).  He also

has completed programs relating to Aggression Replacement Training, Alternatives to

Violence, and Alcohol and Substance Abuse Treatment.  His positive institutional

adjustment is further demonstrated by the fact that he has not received any disciplinary

infractions over the past ten years.  (<u>Id.</u> ¶ 3).

B.    <u>Pleadings</u>

McLaurin's original complaint in this action is dated March 12, 2007; his

Amended Complaint is dated August 31, 2007.  (Docket Nos. 1, 14).  In the Amended

Complaint, McLaurin alleges that the Defendants' denial of his requests for parole

violated his constitutional rights under the Due Process and Equal Protection Clauses of

the Fourteenth Amendment and the Ex Post Facto Clause of Article I of the United States

Constitution.

More specifically, McLaurin contends that his procedural due process rights

were violated because the Defendants:  (1) failed to consider Judge Mathews' remarks as

a recommendation under New York Executive Law Section 259-i and refused to

acknowledge that Judge Mathews had expressly recommended that McLaurin be paroled

after ten years; (2) relied on erroneous information indicating that McLaurin had seven or

eight felony convictions; (3) incorrectly referred to McLaurin's youthful offender

adjudication as a felony conviction; (4) mischaracterized information contained in a

Victim Impact Statement by noting incorrectly that the victims of his crime had sustained

physical injuries; and (5) failed adequately to train and supervise the parole

commissioners and staff.[5]  (Am. Compl. ¶¶ 47, 59-62).  McLaurin also contends that the

Defendants violated his due process, equal protection, and Ex Post Facto Clause rights by

maintaining an unofficial policy of denying parole on the basis of an inmate's criminal

history, without meaningful consideration of the other statutory factors.  (Id. ¶¶ 48-58).

Finally, he alleges that the Defendants violated his Ex Post Facto Clause rights by

improperly requiring that his release conditions comply with the New York Sexual

Offender Registration Act ("SORA"), N.Y. Correct. Law § 168, et seq.  (Id. ¶ 47).

McLaurin seeks declaratory and injunctive relief to prevent these alleged

violations from recurring.  Specifically, he seeks (1) an order declaring that the

Defendants violated his constitutional rights and (2) an injunction requiring the Parole

Board to (a) stop making parole release determinations solely on the basis of his prior

criminal history, (b) expunge all inaccurate information in his parole file, and (c) provide

---

[5]     McLaurin frames the failure-to-train claim in his Amended Complaint as a "deliberate indifference" claim, (Am. Compl. ¶¶ 59-62), evidently hoping to extend liability to the current Governor and Chairman of the Division of Parole, neither of whom had any personal involvement in the denial of his parole.  To the extent that McLaurin seeks to bring this claim as a Monell claim, see Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), he faces the obstacle that no municipality is involved in this action.  See id. at 691 n.54 (noting that local governments may be sued under Section 1983 because, unlike states, they do not have Eleventh Amendment immunity); see also City of Canton v. Harris, 489 U.S. 378, 388 (1989) (municipalities may be held liable for damages under Monell arising out of a failure to train their personnel where it amounts to deliberate indifference).

him with an immediate <u>de novo</u> parole hearing at which the Defendants acknowledge that

Judge Mathews' remarks constitute a recommendation that McLaurin be released after

ten years' imprisonment.  (<u>Id.</u> ¶¶ 63-72).

      C.    <u>Motion to Dismiss</u>

      On November 19, 2007, the Defendants moved to dismiss the Amended

Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure, on the grounds that (1) McLaurin's claims against Pataki and Dennison are

moot, (2) certain of his claims are barred by the statute of limitations, (3) McLaurin has

failed to allege sufficient personal involvement on the part of Spitzer and Alexander with

respect to certain alleged constitutional violations, and (4) the Amended Complaint fails

to state a claim upon which relief can be granted.[6]  (Docket No. 19).

      McLaurin has filed a memorandum of law and affidavit in opposition to the

motion to dismiss which (despite his <u>pro se</u> status) are polished and well-reasoned.

(Docket Nos. 33-34).  The Defendants, in turn, have filed a reply memorandum.  (Docket

No. 35).  Accordingly, the motion is fully submitted.

---

      [6]    The Defendants withdrew additional arguments regarding qualified immunity and the Eleventh Amendment because McLaurin is not seeking monetary damages.  (Defs.' Reply Mem. at 1 n.1).

III.    <u>Discussion</u>

    A.    <u>Standard of Review</u>

        Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction over the claim.  Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if it fails to state a claim for which relief can be granted.  Although the same standard of review applies to both motions, Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003); <u>Alster v. Goord</u>, No. 05 Civ. 10883 (WHP), 2008 WL 506406, at *2 (S.D.N.Y. Feb. 26, 2008), a court "must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" <u>Tirone v. N.Y. Stock Exch., Inc.</u>, No. 05 Civ. 8703 (WHP), 2007 WL 2164064, at *3 (S.D.N.Y. July 27, 2007) (quoting <u>Magee v. Nassau County Med. Ctr.</u>, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

        In connection with both motions, the court must accept the material factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164 (1993); <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Hernandez v. Coughlin</u>, 18 F.3d 133, 136 (2d Cir. 1994).  As the Supreme Court recently has explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965-66

& n.5 (2007). This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis omitted).

Because McLaurin is a pro se litigant, the Court may rely on both his amended complaint and his motion papers in assessing the legal sufficiency of his claims. See, e.g., Milano v. Astrue, No. 05 Civ. 6527 (KMW)(DF), 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007); Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999); Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997). The Court may also consider any documents referenced in his pleadings or which are properly the subject of judicial notice. See Tarshis v. Riese Org., 211 F.3d 30, 39 (2d Cir. 2000), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991). Indeed, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); see Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (where "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the court may

12

consider the documents" in connection with a Rule 12(b)(6) motion) (internal quotation marks omitted); <u>Thomas v. Westchester County Health Care Corp.</u>, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) ("Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint.").

Additionally, because McLaurin is proceeding <u>pro se</u>, the Court must read his papers "liberally, and . . . interpret them to raise the strongest arguments that they suggest." <u>Sloane v. Mazzuca</u>, No. 04 Civ. 8266 (KMK), 2006 WL 3096031, at *3 (S.D.N.Y. Oct. 31, 2006) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)) (ellipsis in original); <u>see also</u> <u>Davis v. Kelly</u>, 160 F.3d 917, 922 (2d Cir. 1998) ("Though a court need not act as an advocate for <u>pro se</u> litigants, in <u>pro se</u> cases there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.") (internal quotation marks and citation omitted). This principle applies with particular force here because McLaurin is alleging a civil rights violation. <u>See, e.g.</u>, <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993); <u>Contes v. City of N.Y.</u>, No. 99 Civ. 1597 (SAS), 1999 WL 500140, at *2 (S.D.N.Y. July 14, 1999).[7]

---

[7]    During a telephone conference on May 29, 2008, I considered whether the Defendants' motion should be converted into a motion for summary judgment. The Defendants previously had warned McLaurin of this possibility by serving a notice of motion containing the cautionary information required by Local Civil Rule 12.1. (<u>See</u> Docket No. 20). Ultimately, I concluded that there was no need to treat the Defendants' motion as a motion for summary judgment because the exhibits attached to the Defendants' papers (McLaurin's Parole Board decisions, Inmate Status Reports related to his Parole Board appearances, and transcripts of his

(continued...)

B.     Rule 12(b)(1)

In their motion papers, the Defendants contend that this Court lacks

jurisdiction over defendants Pataki and Dennison because McLaurin's claims against

them are moot.  (Defs.' Mem. at 5).  A case is moot when "the problem sought to be

remedied has ceased, and where there is 'no reasonable expectation that the wrong will be

repeated.'"  Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (quoting Preiser v.

Newkirk, 422 U.S. 395, 402 (1975)).  If the case is moot, the court lacks subject matter

jurisdiction.  Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994).

In this action, McLaurin has sued Pataki and Dennison solely in their

official capacities.  (Am. Compl. ¶¶ 7, 9).  Under Rule 25(d) of the Federal Rules of Civil

Procedure, when a "public officer who is a party in an official capacity . . . ceases to hold

office while the action is pending . . . [t]he officer's successor is automatically substituted

as a party."  This rule is "designed to prevent suits involving public officers from

becoming moot due to personnel changes."  Karcher v. May, 484 U.S. 72, 83 (1987).

Accordingly, Paterson and Alexander, the current Governor of New York and Chairman

of the Division of Parole, respectively, have been substituted for Pataki and Dennison.

See supra note 1.  Whether McLaurin's claims against Pataki and Dennison technically

are moot is therefore irrelevant because other parties have been substituted for them.

---

[7](...continued)
Parole Board interviews) are either incorporated by reference in McLaurin's Amended Complaint
or are integral thereto.  (Compare Am. Compl. ¶¶ 25-46, with Exs. A-G).  Accordingly, they can
be considered without treating the Defendants' motion as a summary judgment motion.

In response to McLaurin's opposition papers, the Defendants also have advanced the argument that <u>all</u> claims against the Defendants arising out of events during the Pataki administration are now moot. (<u>See</u> Defs.' Reply Mem. at 2 n.3). In that regard, McLaurin alleges in his Amended Complaint that the Pataki administration adopted an unconstitutional policy that has been continued by the current administration. (Am. Compl. ¶ 16). If so, the wrongs that he alleges have not been remedied, and there is a reasonable possibility that they might be repeated. McLaurin's claims against the Defendants consequently are not moot. <u>See</u> <u>Graziano v. Pataki</u>, No. 06 Civ. 480 (CLB), 2007 WL 4302483, at *1 (S.D.N.Y. Dec. 5, 2007).

    C.    <u>Rule 12(b)(6)</u>

        1.    <u>Statute of Limitations</u>

The statute of limitations for Section 1983 actions arising out of constitutional wrongs in New York is three years. <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994). In calculating this period, courts assume, pursuant to the "prison mailbox" rule, that a pleading is filed when it is given to prison officials. <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 275-76 (1988); <u>Nobel v. Kelly</u>, 246 F.3d 93, 97 (2d Cir. 2001). In this case, McLaurin's original complaint is dated March 12, 2007, and was mailed to the Court by prison officials on March 23, 2007. His papers are silent, however, as to the date that the complaint was tendered to prison officials for mailing.

On the assumption that McLaurin tendered his complaint to prison officials on the date that he signed it, any claims that accrued before March 12, 2004, would be time barred.  To the extent that McLaurin seeks relief in connection with alleged violations of his rights during the 2001 and 2003 parole hearings, his Amended Complaint therefore must be dismissed.  McLaurin apparently does not disagree with this analysis.  Indeed, in his opposition papers, McLaurin explains that the list of parole commissioners named in his Amended Complaint intentionally excluded those who had participated only in the denial of his parole in 2001 and 2003.  (Pl.'s Mem. at 10; Aff. of Norris J. McLaurin, sworn to on Nov. 30, 2007 ("Pl.'s Aff."), ¶ 2).

2.    Failure to State a Claim Under Section 1983

Section 1983 provides a means by which a person alleging a constitutional deprivation may bring a claim, but does not itself create any substantive rights.  Sykes, 13 F.3d at 519.  Consequently, to state a claim under Section 1983, a plaintiff must allege that a "person" acting under color of state law has deprived him of a right, privilege, or immunity guaranteed by the United States Constitution.  See 42 U.S.C. § 1983; Fox v. City of N.Y., No. 03 Civ. 2268 (FM), 2004 WL 856299, at *4 (S.D.N.Y. Apr. 20, 2004).  Here, as noted above, McLaurin alleges that the Defendants, while acting under the color of state law, violated his Fourteenth Amendment and Ex Post Facto Clause rights.

16

a.    State Agencies Are Not "Persons"

A state agency does not qualify as a "person" under Section 1983. Harris v. N.Y. State Dep't of Health, 202 F. Supp. 2d 143, 178 (S.D.N.Y. 2002) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). Accordingly, McLaurin's claims against the Division of Parole must be dismissed because it is a New York state agency. Rios v. N.Y. Exec. Dep't Div. of Parole, No. 07 Civ 3598 (DLI), 2008 WL 150209, at *3 (E.D.N.Y. Jan. 14, 2008).

b.    Lack of Personal Involvement

The Defendants contend that all claims other than those related to the 2007 parole hearing should be dismissed as against defendants Spitzer and Alexander because they were not personally involved in any earlier hearings. (Defs.' Mem. at 6.) The Defendants presumably would also extend that argument to include Paterson, who has now been substituted for Spitzer as a defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Personal involvement in an alleged constitutional deprivation is, of course, a "prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). In his Amended Complaint, however, McLaurin seeks only injunctive and declaratory relief. Personal involvement of a defendant is not required in such circumstances. See, e.g., Voorhees v. Goord, No. 05 Civ. 1407 (KMW)(HBP), 2006 WL 1888638, at *6 n.1 (S.D.N.Y. Feb. 24, 2006); Lyerly v. Phillips, 04 Civ. 3904 (PKC),

17

2005 WL 1802972, at *4 (S.D.N.Y. July 29, 2005).  The claims against the Governor and the Chairman of the Division of Parole in their official capacities therefore should not be dismissed on this ground.

> c.    Due Process

McLaurin advances two distinct due process claims.  First, he contends that the specific manner in which the Parole Board conducted his parole hearings violated his due process rights.  Second, he contends that the Defendants' unofficial policy of denying parole to all inmates solely on the basis of their criminal histories, without any meaningful consideration of the other statutory factors, gives rise to a due process violation.

At the outset, it is clear that there is no constitutional right to parole. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Accordingly, for a state prisoner to have an interest in parole that is protected by the Due Process Clause, "he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001).  The New York parole system, however, does not give any inmate a legitimate expectation that he will be released on parole.  Marvin v. Goord, 255 F.3d 40, 44 (2d Cir. 2001); Barna, 239 F.3d at 171.  For this reason, alleged violations of the procedural requirements of the New York parole scheme are generally matters for the state courts.  Mathie v. Dennison, No. 06 Civ. 3184 (GEL), 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007).  The Due

Process Clause nevertheless may be violated if parole is denied for arbitrary or impermissible reasons, such as reliance upon a protected characteristic or an irrational distinction. See, e.g., id. at *6; Cartagena v. Connelly, No. 06 Civ. 2047 (LTS)(GWG), 2006 WL 2627567, at *7 (S.D.N.Y. Sept. 14, 2006); Siao-Pao v. Mazzuca, 442 F. Supp. 2d 148, 154 (S.D.N.Y. 2006); Morel v. Thomas, No. 02 Civ. 9622 (HB), 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003).

Under New York law, parole is not a reward for good conduct in prison; rather, it is granted only when there is a "reasonable probability" that the inmate will not violate the law upon his release, his release is not inconsistent with societal welfare, and it "will not so deprecate the seriousness of his crime as to undermine respect for law." N.Y. Exec. Law § 259-i(2)(c)(A). In making its decision with respect to a request for parole, the Board may consider, among other factors, the offender's background, his criminal history, the severity of his offense and any prior offenses, and the manner in which he has adjusted to any prior release on probation or parole.[8] Id.

---

[8]    More specifically, Executive Law Section 259-i provides that the Parole Board must consider:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government . . . ; and (v) any statement made to the board by the crime victim or the victim's representative . . . .

(continued...)

i.    McLaurin's Hearings

McLaurin's first due process claim is that his rights were violated as a consequence of various procedural errors that arose during his parole hearings. According to McLaurin, the Defendants:  (a) failed to treat Judge Mathews' remarks as a sentencing recommendation and refused to acknowledge that the judge had expressly recommended that McLaurin be paroled after ten years; (b) relied on erroneous information that McLaurin had seven or eight felony convictions; (c) incorrectly referred to McLaurin's youthful offender adjudication as a felony conviction; (d) mischaracterized information contained in the Victim Impact Statement by noting incorrectly that the victims sustained physical injuries; and (e) failed adequately to train and supervise parole commissioners and staff.  (Am. Compl. ¶¶ 47, 59-62).

---

[8](...continued)

N.Y. Exec. Law § 259-i(2)(c)(A).  Additionally, if the court has set a minimum period of incarceration, the Board must consider:

> (i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

Id. § 259-i(1)(a) (emphases added).

20

McLaurin previously prevailed in state court on his claim that the Parole Board failed to consider the resentencing minutes during the 2005 hearing. <u>See</u> <u>McLaurin</u>, 27 A.D.3d at 565-66. Indeed, the court's ruling in that case resulted in the Parole Board's <u>de</u> <u>novo</u> hearing in 2006. The transcripts of that hearing and the subsequent hearing in 2007 establish, however, that the Parole Board did take into account the recommendation by Judge Mathews that McLaurin "be considered by parole at the earliest possible release date." (Am. Compl. Attach. at 5). For example, the Parole Board's explanation of its parole denial in 2006 expressly states that it "review[ed the] sentencing minutes." (Ex. E at 2). Similarly, in 2007, the Inmate Status Report provided to the Board noted that McLaurin's sentencing and resentencing minutes were in the file. Although the Inmate Status Report incorrectly indicates that the judge did not make an "official statement," it accurately quotes the statement by Judge Mathews regarding early consideration for parole upon which McLaurin relies. (Ex. F at 1-2). Furthermore, the transcripts of both the 2006 and 2007 hearings confirm that the Board considered the state court's sentencing recommendation in reaching its decisions to deny McLaurin's request for parole. (<u>See</u> Exs. E at 5 ("both sentencing minutes are now present inside your folder"), 8 ("even the resentencing judge indicated he noticed your level of intelligence"), G at 5-6 ("We have a copy of [the sentencing minutes] which we've had a chance to review" in which the judge said you should be "considered by the Parole Board a[t] the

earliest possible release date.").[9]  In light of this undisputed record, McLaurin cannot prevail on his claim that the Board failed to consider Judge Mathews' recommendation in the course of denying his requests for parole.

McLaurin's other claims regarding the conduct of his hearings are equally baseless.  First, notwithstanding his assertions to the contrary, (see Pl.'s Aff. ¶ 9), McLaurin does have eight felony convictions – one for sexual abuse in 1973, three for robbery in 1979, one for attempted possession of prison contraband in 1979, one for robbery in 1983, one for conspiracy in 1988, and one for robbery in 1992.[10]  (Ex. A at 3-4).  Second, the Parole Board never referred to McLaurin's youthful offender adjudication as a felony conviction; it instead only noted (correctly) that McLaurin's criminal history "dates back to a 1972 youthful offender."  (Ex. E at 2).  Third, the Inmate Status Reports prepared for the Board did not indicate that the victims incurred physical injuries, but, rather, that McLaurin's robbery involved "force/physical injury."  This statement is accurate because McLaurin displayed what appeared to be a firearm during the course of the bank robbery, ordered all of the tellers and customers to get "down on the fucking floor," and threw one of the witnesses to the ground.  (Exs. A at 2, C at 1).

_____

[9]     In its written decision in 2007, the Board did not expressly refer to the resentencing minutes but previously had acknowledged reviewing them during the hearing.  The omission from the decision is not dispositive.  See Morel, 2003 WL 21488017, at *4 (parole board "need not expressly discuss each of the reasons in its determination").

[10]     Although McLaurin's three robbery convictions in 1979 may have constituted a single conviction for sentencing purposes, see McLaurin, 1998 WL 146282, at *1, he undeniably was convicted of three separate crimes.  Moreover, there is no basis for his claim that his attempted possession of prison contraband conviction in 1979 was a misdemeanor.  That crime is in fact a felony.  See N.Y. Penal Law § 205.25; (Ex. A at 4; Pl.'s Aff. Ex. 2).

Finally, the hearing transcripts confirm that the Board interviewed McLaurin at some length during his appearances in 2006 and 2007 and considered the appropriate statutory factors in denying his release on parole. It follows that there is no basis for his claim that he was denied due process because the Board members who conducted those parole hearings were inadequately trained.[11]

Furthermore, even if the Court were to assume that the Defendants committed one or more of the procedural errors alleged in the Amended Complaint, the 2005, 2006, and 2007 hearing transcripts establish that the Parole Board's decisions regarding McLaurin were not made in an arbitrary manner or for impermissible reasons. Indeed, the Board considered the circumstances leading to McLaurin's conviction, his prior criminal record, his institutional adjustment, and his future plans. In 2006 and 2007, the Board also took into account the sentencing judge's recommendation. The transcript of the 2007 hearing further indicates that the Board took notice of McLaurin's "improved behavior, program accomplishments, and community support." (Ex. G at 2). Ultimately, however, the Parole Board concluded that McLaurin's "lengthy record of crime, and poor supervision record" outweighed his positive adjustment in determining his fitness for parole. (Id.). This is precisely the sort of weighing of factors that the Board is statutorily

---

[11]    McLaurin attaches to his affidavit comments made by Commissioner Manley ("Manley") in the course of a panel discussion at the Association of the Bar of the City of New York. (Pl.'s Aff. Ex. 9). Those comments, which relate to Manley's lack of training and the general practices of the Parole Board, are disturbing. However, Manley did not participate in McLaurin's 2006 or 2007 parole hearings. The comments also relate to the Parole Board in general; they do not support the proposition that the Defendants violated McLaurin's due process rights during his parole hearings. (See Exs. E at 4, G at 4).

empowered to undertake.  See Manley v. Thomas, 255 F. Supp. 2d 263, 267 (S.D.N.Y. 2003); Brown v. Thomas, No. 02 Civ. 9257 (GEL), 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003).

Consequently, even if there were minor irregularities in the Board's proceedings – such as the failure to update the Inmate Status Report prior to the 2006 de novo parole hearing or the ministerial failure to indicate on the 2007 Inmate Status Report that the sentencing judge had made an official statement – McLaurin was afforded all the process that the United States Constitution requires.  See Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 429-30 (S.D.N.Y. 2003) (use of uncorrected pre-sentence report and statement of incorrect facts in parole decision does not violate due process).  It follows that any further relief to which McLaurin may be entitled must be sought in state court.  See Standley v. Dennison, No. 9:05 Civ. 1033 (GLS)(GHL), 2007 WL 2406909, at *9 (N.D.N.Y. Aug. 21, 2007); Mathie, 2007 WL 2351072, at *6.

I note that in a recent letter McLaurin has asked the Court to consider South v. New York State Division of Parole, N.Y.L.J., Apr. 23, 2008, at 26 (Sup. Ct., N.Y. County, Apr. 8, 2008), in making its determination regarding his due process claims. (Letter from McLaurin to the Court, dated Apr. 21, 2008 ("Pl.'s Letter"), at 1-2).  In that case, Justice Goodman held that an inmate was entitled to a de novo parole hearing. Justice Goodman's decision, however, was based on state law and a concession by the Attorney General that the petitioner's hearing did not meet the requirements of state law. The case therefore has no bearing on whether McLaurin's federal constitutional rights

24

were violated; if anything, it confirms that any relief to which McLaurin may be entitled rests with the state court.

ii.    Alleged Policy

McLaurin's other due process claim is that the Defendants have maintained an unofficial policy of denying parole to almost all prisoners sentenced under the recidivist statutes on the basis of their criminal history, "without any meaningful consideration . . . of any other . . . statutorily mandated factor[.]"  (Am. Compl. ¶ 49). Several judges have considered similar allegations concerning the alleged parole policies of the Pataki administration.  At least four of those judges have concluded that such a policy – if shown to exist – would not violate the Due Process Clause.  See Tatta v. Brown, No. 06 Civ. 2852, 2007 WL 4298709, at *1-2 (E.D.N.Y. Dec. 6, 2007) (Block, J.) (basing parole decision on two statutory factors, the nature of the prisoner's crime and his criminal history, does not violate procedural or substantive due process); Schwartz v. Dennison, 518 F. Supp. 2d 560, 574 (S.D.N.Y. 2007) (Holwell, J.) ("a BOP policy of denying parole to sex offenders would not violate the Due Process Clause"); Mathie, 2007 WL 2351072, at *6-7 (Lynch, J.) ("A policy that requires the Board to look first and foremost at the severity of the crime . . . is neither arbitrary nor capricious."); Cartagena, 2006 WL 2627567, at *9 (Gorenstein, Mag. J.) (policy of denying parole to serious offenders would be proper because Board may give statutory factors whatever weight it deems appropriate and need not cite each factor in its decision).

In <u>Mathie</u>, for example, Judge Lynch assumed the existence of a policy to deny parole automatically to all violent felons, but held that such a policy did not violate the Due Process Clause. <u>Mathie</u>, 2007 WL 2351072, at *6-7. This decision rested principally on three grounds. First, under New York law the Board may "give whatever weight it deems appropriate to the statutory factors." <u>Id.</u> at *6 (quoting <u>Romer v. Travis</u>, No. 03 Civ. 1670 (KMW)(AJP), 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003)). Judge Lynch noted that the policy merely required the Parole Board to "overvalue[ ] the severity of the crime, at the expense of other statutory considerations." <u>Id.</u> In his view, this did not violate the Due Process Clause because due process required only that the Board not act arbitrarily or impermissibly. Second, Judge Lynch observed that even if New York adopted the policy as law, it would not violate an inmate's due process rights because the "federal system has abolished parole altogether for all inmates, including both violent and non-violent felons." <u>Id.</u> at *7. As he reasoned, "[i]f the federal government can abolish parole altogether without violating the Constitution, then New York State surely acts within constitutional confines if it decides to restrict parole to only non-violent felons, whom the State could rationally find pose a greater risk to public safety and therefore are not proper candidates for early release." <u>Id.</u> Finally, as Judge Lynch explained, even if the Board enacted its policy in violation of state law, the proper venue for such a claim would be state court.[12] <u>Id.</u>

─────────────

[12]    In an unpublished opinion, however, the Second Circuit has stated that it is an open question whether a prisoner has a "liberty or property interest in having the Parole Board

(continued...)

26

The sole authority suggesting that a policy of uniformly denying parole to violent or persistent violent felons would violate due process is Judge Brieant's decision in Graziano, 2006 WL 2023082, at *6-9. In that case, Judge Brieant denied a motion to dismiss, and later granted certification of a class action, because the plaintiffs – A-1 felons who were denied parole – made what he considered a nonfrivolous statistical case that the Parole Board, rather than exercising its discretion in a misguided fashion, was failing to exercise its discretion at all. Ironically, the plaintiffs in that action suggested that the Board was not handcuffed by any alleged policy with respect to non-A-1 felons, i.e., persons convicted of crimes other than murder, such as McLaurin.[13] See id. at *1-2, 8.

Here, as in Mathie, McLaurin's contention, at its core, is that the Defendants are relying almost exclusively on the criminal history of a prisoner in determining whether to grant parole release, at the expense of the other statutory factors. The Parole Board is entitled, however, to determine that a prisoner's criminal history outweighs any of the other statutory factors. Siao-Pau, 442 F. Supp. 2d at 154 (placing heavy emphasis on a prisoner's criminal history is "entirely consistent with the criteria

---

[12](...continued)
comply with its own statutory and regulatory guidelines in determining whether to grant or deny parole." See Rodriguez v. Greenfield, 7 Fed. App'x 42, 43 (2d Cir. 2001).

[13]    In his April 21 letter, McLaurin asks the Court to address his status in the Graziano class action. (Pl.'s Letter at 2). That issue is not properly before this Court. In any event, the Graziano class includes only those prisoners "convicted of A-1 felony offenses." (See Docket No. 98 in Graziano, No. 06 Civ. 480). McLaurin concedes that he has not been convicted of such an offense. (Letter from McLaurin to the Court, dated May 1, 2008, at 2).

laid down by the legislature") (quoting <u>Morel</u>, 2003 WL 21488017, at *5).  Accordingly, even if McLaurin was denied parole as a matter of Board policy, this does not raise any due process concerns.

        d.      <u>Equal Protection</u>

McLaurin next claims that he was denied his rights under the Equal Protection Clause because the Defendants treated persistent felony offenders and persistent violent felony offenders differently than non-persistent felony offenders.  (Am. Compl. ¶ 57).  Assuming that this is true, it does not constitute an impermissible ground for the denial of parole.  The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  Nevertheless, because prisoners are not a suspect class, <u>Lee v. Governor of N.Y.</u>, 87 F.3d 55, 60 (2d Cir. 1996), the policy is "presumed constitutional and need only be rationally related to a legitimate state interest."  <u>Mathie</u>, 2007 WL 2351072, at *8 (quoting <u>Salahuddin v. Unger</u>, No. 04 Civ. 2180 (JG), 2005 WL 2122594, at *7 (E.D.N.Y. Sept. 2, 2005)).

The state clearly has a rational basis for drawing a distinction in parole determinations between persistent offenders and non-persistent offenders, which is to "prevent[] the early release of potentially violent inmates" or those who are more likely to recidivate.  <u>See</u> <u>Salahuddin</u>, 2005 WL 2122594, at *7.  Moreover, as Judge Baer has observed,

> the motive and animus that [McLaurin] contends is
> impermissible – namely the Board's decision to get tough on

28

> violent [or persistent] offenders because of public and
> political pressure – in fact seems entirely permissible, as it
> closely relates to the statutory factor of whether "release is not
> incompatible with the welfare of society and will not so
> deprecate the seriousness of the offense as to undermine
> respect for law."

Morel, 2003 WL 21488017, at *5.  McLaurin's equal protection claim consequently fails

as a matter of law.

e.    Ex Post Facto

Finally, McLaurin contends that the Defendants violated his Ex Post Facto

Clause rights by adopting its alleged policy and by incorporating into his release

conditions terms required by SORA.  (Pl.'s Mem. at 22-24).  Under the Ex Post Facto

Clause, states are prohibited from passing legislation that imposes punishment for an act

not punishable at the time it was committed or which is in addition to that then prescribed.

U.S. Const. art. I, § 10, cl. 1; Burgess v. Salmon, 97 U.S. 381, 384 (1878).  The focus is

on whether the change "alters the definition of criminal conduct or increases the penalty

by which a crime is punishable."  Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n.3

(1995).  Changes in the law governing parole decisions that "create[ ] a significant risk of

prolonging [the plaintiff's] incarceration" consequently may violate the Ex Post Facto

Clause.  Garner v. Jones, 529 U.S. 244, 251 (2000).  On the other hand, a "law that is

merely procedural and does not increase a prisoner's punishment cannot violate the Ex

Post Facto Clause even when applied retrospectively."  Barna, 239 F.3d at 171.

i.    Policy

McLaurin alleges that the Defendants' adoption of a policy pursuant to which they automatically denied parole to inmates with a prior criminal history violates the Ex Post Facto Clause.  The Ex Post Facto Clause, however, applies only to <u>laws</u>.  U.S. Const. art. I, § 10, cl. 1.  In <u>Garner</u>, the Supreme Court determined that state parole regulations are such laws.  <u>See</u> <u>Garner</u>, 529 U.S. at 247, 257.  Although the Supreme Court also explained that a parole board's policy statements and practices could be considered in determining whether a statute or regulation violated the Ex Post Facto Clause, <u>id.</u> at 256-57, the Court did not address whether parole board policies or guidelines constitute "laws" subject to ex post facto analysis.  <u>See</u> <u>Anderson-El v. U.S. Parole Comm'n</u>, No. 05 Civ. 2697 (JSR), 2006 WL 2604723, at *5 n.2 (S.D.N.Y. Sept. 11, 2006) (Report & Rec. of Katz, Mag. J.).

Prior to <u>Garner</u>, the weight of authority favored the view that the Ex Post Facto Clause was inapplicable to nonmandatory guidelines used to guide the discretion of a parole board.  <u>See, e.g.</u>, <u>DiNapoli v. Ne. Reg'l Parole Comm'n</u>, 764 F.2d 143, 147 (2d Cir. 1985) ("parole guidelines as applied here are not 'laws' within the meaning of the ex post facto clause"); <u>Pindle v. Poteat</u>, 360 F. Supp. 2d 17, 20 (D.D.C. 2003) ("Most courts of appeals addressing the question have held that Parole Commission guidelines, which simply provide guides for the exercise of discretion, cannot be considered 'laws' for purpose of the Ex Post Facto Clause."); <u>see also</u> <u>Portley v. Grossman</u>, 444 U.S. 1311, 1312 (1980) (because "guidelines operate only to provide a framework for the

Commission's exercise of its statutory discretion[, a] change in guidelines assisting the Commission in the exercise of its discretion is . . . a [permissible] procedural change"). Since Garner, however, the circuit courts have split on this issue. Compare Glascoe v. Bezy, 421 F.3d 543, 548 (7th Cir. 2005) ("discretionary guidelines, unlike statutes or the 'rules' addressed in Garner, are not within the ambit of the Ex Post Facto Clause"), and Warren v. Baskerville, 233 F.3d 204, 207-08 (4th Cir. 2000) (administrative policies are not subject to Ex Post Facto Clause), with Michael v. Ghee, 498 F.3d 372, 384 (6th Cir. 2007) (guidelines are subject to Ex Post Facto analysis), and Fletcher v. Dist. of Columbia, 391 F.3d 250, 251 (D.C. Cir. 2004) (Garner "foreclosed [the] categorical distinction between a measure with the force of law and guidelines") (internal quotation marks omitted).

Although the Second Circuit has not specifically addressed Garner, in its subsequent decision in Barna v. Travis, the court held that discretionary parole guidelines are not subject to the Ex Post Facto Clause. Barna, 239 F.3d at 171. In that case, the plaintiffs alleged that New York State had a policy pursuant to which prisoners convicted of violent crimes were systematically denied parole. Id. at 170. The Second Circuit rejected the plaintiffs' Ex Post Facto claim, noting that the New York State parole guidelines do not create mandatory rules for release but seek only to guide the Parole Board's discretion. Id. at 171. The court therefore held that the guidelines were "not 'laws' within the meaning" of the Ex Post Facto Clause. Id.

31

McLaurin does not allege that the legislature amended the statute governing parole release, Executive Law Section 259-i, or that a state agency adopted a formal regulation that would bind the Board's discretion.  He argues instead that the Defendants' policy encouraged the Board to deny parole solely on the basis of criminal history, without meaningful consideration of the other statutory factors.  Stated slightly differently, McLaurin's argument is essentially a claim that the policy permitted the Board to place significantly more emphasis on the statutory factors relating to a prisoner's criminal history at the expense of such other important factors as the prisoner's institutional record and release plans.  See N.Y. Exec. Law § 259-i(1)(a), (2)(c)(A).  If so, the alleged policy was, at best, a guideline used by the Parole Board in balancing the statutory factors.  Although the policy sought to guide the Board in the exercise of its discretion, it was not a mandatory rule binding the Board.  This Court therefore is bound by Barna and must hold that the Ex Post Facto Clause is inapplicable to the Defendants' alleged policy.  See Farid v. Bouey, No. 05 Civ. 1540, 2008 WL 2127460, at *16 (N.D.N.Y. May 20, 2008) (Report & Rec. of Peebles, Mag. J.) (Pataki parole policy is not "law" subject to Ex Post Facto Clause); Salahuddin, 2005 WL 2122594, at *8 (same); Parks v. Edwards, No. 03 Civ. 5588 (JG), 2004 WL 377658, at *4 (E.D.N.Y. Mar. 1, 2004) (same); see also Mathie, 2007 WL 2351072, at *13 (upholding the Pataki policy despite the plaintiff's ex post facto claim).  But see Graziano, 2006 WL 2023082, at *10-11 (parole board policy subject to Ex Post Facto Clause).

ii.    Sexual Offender Registration Act

McLaurin also contends that the Defendants violated his rights under the Ex Post Facto Clause by improperly applying SORA to his release conditions. SORA, which was enacted well after McLaurin's conviction for sexual abuse, imposes certain obligations on those convicted of specified sex offenses. See Doe v. Pataki, 120 F.3d 1263, 1266 (2d Cir. 1997). In Doe v. Pataki, the Second Circuit concluded that the "application of the registration and notification provisions of . . . SORA to persons who committed their offenses prior to the January 21, 1996, effective date of the Act does not violate the Ex Post Facto Clause." Id. at 1285. This holding does not necessarily control McLaurin's claim because the conditions that the Inmate Status Reports recommended be attached to his parole release do not relate to notification or registration, but rather to his use of medication and participation in a polygraph program. (See Ex. F at 3).

The Court need not decide whether retroactive application of those conditions violates the Ex Post Facto Clause, however, because those conditions have not been applied to McLaurin. Indeed, the conditions are recommended for imposition only when McLaurin is granted parole release, an event which has yet to occur. McLaurin's claim therefore is not ripe for review. See United States v. Balon, 384 F.3d 38, 46 (2d Cir. 2004) (ripeness doctrine prevents "a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur") (internal quotation marks omitted).

IV.    Conclusion

For the foregoing reasons, the Court should grant the Defendants' motion to dismiss McLaurin's Amended Complaint. (Docket No. 21).

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:     New York, New York
           June 12, 2008

                                    _____
                                    FRANK MAAS
                                    United States Magistrate Judge

34

Copies to:

Norris J. McLaurin
DIN# 92-B-0772
Mid-Orange Correctional Facility
900 Kings Highway
Warwick, New York 10990

Neil Shevlin, Esq.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271-0332